Riblet v. Wallis.

---

GEORGE W. RIBLET, *Assignee of Elias T. Hicks, v.* ALEXANDER H. WALLIS, *Administrator, with the will annexed of Elizabeth Larkin, deceased.*

Where a married woman authorized her husband to contract for work and materials for a dwelling house she was erecting upon her separate estate and for the repairs of other buildings also belonging to her estate, which contract was partially executed during her life, and was completed after her death,— *Held*, that her husband, to whom she had left a life interest in her estate after the payment of certain legacies, and appointed her executor with power to manage, mortgage or sell her estate, and to invest the proceeds as he should deem most advantageous for those interested, was not liable in his individual capacity for what was done under the contract either before or after the wife's death, that he was answerable only in his representative character as her executor, and having died without paying the debt, that the administrator of the estate with the will annexed was bound to pay the debt out of assets in his hand.

This was an action against the defendant as administrator with the will annexed of Elizabeth Larkin. The testatrix by her last will and testament, by which she appointed her husband, Moses Larkin, her executor, after devising certain personal estate, devised the residue of her estate, real and personal, and the rents, issues and profits thereof, to her husband, Moses Larkin, during his natural life, and after his death, the rest, residue and remainder to her children. She further authorized and empowered her husband to manage and invest the residue and remainder of her estate, real and personal, as he might deem most for the interest of those interested, and at any time at his discretion, to sell, convey and mortgage the same or any part of it; to reinvest the proceeds, and to change and alter such investments at his pleasure, and that if her husband should at any time pay off any mortgage upon any part of her estate, or expend any of his private funds upon the improvement of any part of it, that the sum so expended should be a charge upon her estate, and should be repaid to him, and that he might retain it out of any of the proceeds of the sale of any part of her estate that might be made by him. The testatrix, about six months before her death, commenced the construction of an expensive and valuable dwelling house

Riblet v. Wallis.

upon certain land at Rockaway, and erected a coach house with stabling and harness rooms and servants' apartments. She continued the construction of the dwelling house until the time of her death ; was frequently at the premises during the erection of the building, and directed her husband and the workmen there employed in regard to it, and authorized her husband to procure materials for and to employ workmen upon it. Her husband in her life time, and by her authority, employed one Harris to furnish materials and perform the plumbing and trimming work upon this dwelling house, and also to do work and furnish materials in the repairing of certain other premises belonging to her separate estate in the city of New York, and at Centerville, Long Island. At the time of her death the dwelling house at Rockaway was nearly finished, the frame was up and enclosed, and the windows in, part of the inside work only remaining to be completed, and Harris up to that time had performed work upon and furnished materials under the employment referred to. Moses Larkin qualified as executor under the will, and went on and finished the building at Rockaway, continuing the employment of Harris after the death of the testatrix, and Harris furnished materials, and performed work upon the premises referred to, to the amount of $1,916 16, to recover which the action is brought. Larkin died before he completed the administration of the estate, and the defendant succeeded to the administration. It further appeared that Harris was employed by Larkin without anything being said either by Larkin or by Harris that Larkin was acting in a representative character, and the work and materials were charged to him individually upon Harris's books.

Judgment being rendered for plaintiff, the defendant appealed.

*J. S. Lawrence*, for the appellant.

I. It was a contract between the plaintiff's assignor and Moses Larkin, for which he was liable in his individual capacity to E. T. Harris, and there was no evidence that the liability of Elizabeth Larkin or her estate was at all contemplated at the time of the making of the contracts, or either of them.

II. By the terms of the will he was to be repaid any sums

he might advance, but he was not authorized to deal with other persons so as to create any claim on their part against her estate. Moses Larkin was tenant for life, and in order that he might enjoy the estate more beneficially she gave to him as devisee enlarged powers, and protected him in any advances he might make.

III. The general power to manage and invest the estate does not imply an authority to make contracts to bind the estate to third parties. (1.) There is nothing in the meaning of the words when used with reference to an estate which would give any such authority. They only confer an authority to invest such portions of the estate as may come into the husband's hands in the course of its management. The words are to be construed together. (2.) But if these words could be construed as conferring any additional authority, then their effect is restrained by the subsequent clause in the devise, which specifies the powers of Moses Larkin. 1st—To sell, convey and mortgage. 2nd—To re-invest. 3d—To repay himself, for any advances, out of the proceeds of sale, and the special powers indicate the intention of the testatrix. If so extensive an authority as one to contract debts, had been intended, it would have been specified. (Cruise Digest, Title, Devise 3S, Sec. 38.)

IV. The intent of the testatrix should be effectuated in construing this will, and it is apparent, from the whole context, that she intended that her husband should, during his tenancy for life, be repaid any advances he might see fit to make, *out of his own funds*. The authority was given to him in enlargement of his rights and privileges as a life tenant, *and not as executor*.

V. By the terms of the will, Moses Larkin was to be repaid his advances out of the proceeds of any sale of any of the estate of the testatrix he might make, and even if the plaintiff had any claim against the estate of the testatrix, by virtue of the contract with Moses Larkin, he could not maintain this action against the defendant as administrator, with the will annexed, for the defendant does not succeed to the special powers conferred upon Moses Larkin, and has no right to make any sales. The complaint should have been framed so as to authorize the appointment of a trustee to carry out the trusts. (*Conklin v. Egerton*, 21 Wendell, 430.)

VI. The cause of action proven was against Moses Larkin, and not against the estate of Elizabeth; and the fact that the articles furnished by E. T. Harris became part of the estate devised by Elizabeth, does not authorize the conclusion that an implied promise arises that her estate or her representative should pay for them.

VII. The plaintiff cannot in this action be subrogated to any demand that the representatives of Moses Larkin might have against the estate of Elizabeth.

VIII. The declaration of Elizabeth that it was her house does not establish the fact that she commenced its erection; being a femme covert she had no authority in law to make any contract, and could not make any declaration to bind her or her estate.

*D. Evans*, for respondent.

I. The will authorized and empowered the executor to bind the estate he represented for any and all improvements he saw fit to make on the premises in question : it was within the scope of the power given him by the will to contract debts in behalf of the estate for improving it.

II. The executor having authority to bind the estate for any improvements he might make to the premises, and having ordered the improvements, and the respondents having made them, the Court will necessarily adjudge them to have been made for and on the credit of the estate.

III. There was no occasion for Moses Larkin or his representatives being a party to any suit, as the respondents had no claim against him personally.

IV. If the will did not authorize Moses Larkin to bind the estate to third persons directly for improvements, then Larkin was personally liable for the improvements.

V. If Moses Larkin then expended his own moneys, which was done by employing the respondents, and becoming personally liable, there is no dispute but that the estate is liable to him for the improvements.

VI. But if Larkin had a remedy against the estate for the money, inasmuch as Larkin was bound to pay it to the respondents, and they were the persons equitably and ultimately entitled

to it, equity will convert Moses Larkin into a trustee for the respondents, and will subrogate them to all the rights and remedies that Moses Larkin had against the estate, and will compel the estate to pay the money directly to the respondents. (United States Equity Digest, vol. II., Title, Subrogation. United States Digest, Supplement, Title, Surety, subdivision 11, Letter E, Right of Subrogation.)

VII.    Larkin was not in this aspect a necessary party to the suit; the person entitled to receive and the person bound to pay the money are in Court, which is sufficient, and if any other person had been a necessary or proper party to the action, the question should have been raised by demurrer or answer. (Code, §§ 144, 147 and 148.   *King* v. *Vanderbilt*, 7 How. Pr. Rep., 385)

By the Court.*—DALY, J.—Two points are made by the defendant : 1. That the engagement entered into by Larkin with Harris in Mrs. Larkin's life time was in his individual capacity; 2. That he had no authority under the will to charge her estate for the work performed by Harris and the materials which he furnished towards the erection of the dwelling house and in the repairs of the other buildings.

As respects the first point it is sufficient to say that as the contract was for repairs and improvement upon property forming part of Mrs. Larkin's separate estate, the presumption would be that the contract was made on her behalf.   The fact that nothing was said between Larkin and Harris, that the former was acting in a representative character, and that the work and materials were charged to Larkin upon Harris's books, would not overcome this presumption.   It would prevail, unless the contrary distinctly appeared.   The referee has found that the contract during Mrs. Larkin's life time was made by Larkin by his wife's authority and I think he was warranted in so finding.   Larkin left an order at Harris's place to have the work done and the material furnished, and it was in evidence that Mrs. Larkin was seen at the building while it was in the course of erection and directed alterations to be made in the work; that Larkin complained that the

---

* Nov. Gen. Term, 1856.   Present INGRAHAM, F. J., DALY and BRADY JJ.

building was too expensive, and that she replied that it was her own house and that she would have it rightly done, and completed as she wanted it. This was certainly sufficient to warrant the referee in concluding that what was done for the improvement and benefit of her property was by her authority, and had she survived, her separate estate could have been charged in equity for the payment of the debt. (*Owens* v. *Dickenson*, Craig & Philips, 48; *Field* v. *Dawle*, 4 Russ., 112; Macqueen on Husband and Wife, 330.) What was done after her death, was but carrying out and completing what she had herself begun, and there can be no other conclusion under the evidence but that Larkin in doing what she had ordered to be done, and which was partially executed during her life time, was acting as the representative of her estate, and not in his individual capacity.

The provision in the will that he was " to *manage her estate* " as he might deem most for the interest of those interested, especially in its connection with the authority given to him to sell or mortgage the whole or any part of it in his discretion, and to reinvest the proceeds and to change and alter such reinvestment at his pleasure, indicates very clearly that it was the intention of the testatrix that he should have authority to do whatever might be essential to the preservation and benefit of her estate, the rents, issues and profits of which he was to enjoy during his life, and the completion of the dwelling house and of the repairs upon the other building were acts proper and necessary in the care and management of the estate.

Lord Coke declared in *Quick* v. *Ludborrow*, (3 Bulst., 30) that if a man is bound to build a house for another by a certain day, and he dies before the day, his executor must perform the contract, from which it equally follows that if a man employ another to build a house for him and he dies before the house is finished, his executor is liable for the fulfillment of the testator's part of the contract. (*Siboni* v. *Kirkman*, 1 Mees. & W. 423; *Marshal* v. *Broadhurst*, 1 Cromp., & Jer., 403; *Wentworth* v. *Cock*, 10 A. & E., 42; 2 Williams on Executors, 1463.) Larkin therefore would have been liable to Harris as executor if Harris had not been allowed to go on and complete the house, which was partially erected when the testatrix died, as well as to complete the repairing of the other building.

As executor therefore it was proper for him to allow Harris to finish what he had begun in the testatrix's life time, and he would have had the right to pay Harris out of the personal estate in his hand, and as Larkin died before Harris was paid, the defendant, who has succeeded to the administration of the estate, is liable in his representative character to Harris' assignor. I cannot see that it makes any difference in this respect that Larkin had a life interest in the estate of which the dwelling house and the other buildings formed a part. The completion of the unfinished building and the repairs were beneficial to the whole estate, and as he did not order the erection of the building or the repairs, but simply finished what the testatrix had begun in her life time, he was not personally liable to the builder for what had been done after her death, but was answerable in his representative character, as executor, upon the whole contract, as well for what was done after as before her death.

Judgment affirmed.