JOHN BAMBRICK, Respondent, v. THE WEBSTER GROVES PRESBYTERIAN CHURCH ASSOCIATION *et al.*, Appellants.

St. Louis Court of Appeals, March 7, 1893.

1. Administration: PERFORMANCE OF CONTRACT OF TESTATOR BY EXECUTOR. An ordinary contract for the erection of a building does not terminate with the death of the contractor, but may be completed by his executor.

2. ————: ————: PROCEEDING WITHOUT ORDER OF COURT. An executor is authorized to complete such contract between the time of the death of the testator and his own qualification as executor, if the necessities of the testator's estate and its preservation so requires; he may also do so without any order of the probate court, under section 100 of the Revised Statutes, after his qualification and before the next term of that court, if the necessity contemplated by that statute exists.

3. ———: ———: MECHANICS' LIENS. A subcontractor, who has furnished material for the building both to the testator and to an executor who completes the testator's contract under these conditions, and who remains unpaid therefor, is entitled to include his entire claim in one lien.

4. **Mechanics' Liens**: SPECIFICATION OF DATES OF WORK. It is not essential to the validity of a mechanics' lien that the account filed as a lien should contain a specification of the dates on which the work was done or the materials were furnished; it is sufficient, if it appears from the lien paper that the lien was filed within the period limited by the statute.

5. ———: CONTRACT PRICE AS EVIDENCE OF VALUE OF MATERIALS. The contract price payable by the original contractor to a subcontractor for materials furnished by the latter is certainly *prima facie* evidence of the value of the materials in an action for the enforcement of the subcontractor's mechanics' lien.

*Appeal from the St. Louis County Circuit Court.*—HON. W. W. EDWARDS, Judge.

AFFIRMED.

*H. S. Priest* and *J. H. Trembley,* for Webster Groves Presbyterian Church Association, appellant; and *John W. McElhinney* and *C. A. De France* for Louisa H. Straub, executrix, appellant.

(1) The court, by refusing appellant's declarations of law, held and proceeded on the theory, that Straub's estate after his death could and did order and accept materials from respondent under the agreement between respondent and Straub, and that appellants were bound by the classifications of Mr. Joyce as to the kind of stone used in the body of the church. The executrix procured no order of the probate court authorizing her as the representative of the estate to complete Straub's contract, and the court, therefore, erred in holding that respondent was entitled to a lien or judgment for any part of the materials furnished subsequent to Straub's death. Revised

Statutes, 1889, secs. 100, 101; *Powell v. Powell*, 23 Mo.
App. 365; *Gauss v. Hussmann*, 22 Mo. App. 115; *State
ex rel. v. Tittman*, 103 Mo. 553, 563. (2) The plaintiff
is not entitled to any lien, for the reason that his
account includes items furnished after Straub's death
with items furnished before, and all are so mingled
that they cannot be separated or distinguished. *Gauss
v. Hussman*, 22 Mo. App. 115; *Reitz v. Ghio*, 47 Mo.
App. 287; *Nelson v. Withrow*, 14 Mo. App. 270. (3)
The court erred in admitting the lien in evidence over
the objection of appellants. It is not a just and true
account, within the meaning of the law, in this, that it
fails to give the several dates or any true or correct
dates when the materials therein referred to were fur-
nished. June 17, 1891, at the top of the account,
cannot be accepted as the date when the materials were
furnished to Christ Straub, because the evidence shows
that he died May 28, 1891. Revised Statutes, 1889,
sec. 6709; *Curless v. Lewis*, 46 Mo. App. 280; *Coe v.
Ritter*, 86 Mo. 288; *Rude v. Mitchell*, 97 Mo. 365;
*Uthoff v. Gerhard*, 42 Mo. App. 256, 258; *Kern v.
Pfaff*, 44 Mo. App. 29, 34.

*T. J. Rowe*, for respondent.

BOND, J.—This action was brought by a material-
man against the executrix of Christ Straub and her
co-defendant, the church association, to recover a
judgment against said executrix for the reasonable
value of material furnished for the erection of a church
building, belonging to her co-defendant, under a
contract between it and her testator, and to have said
judgment declared a lien upon said building and the
lot of ground on which it was constructed.

The separate answers of defendants were general
denials, except that it was admitted by the executrix

that her testator died on May 28, 1891, and that she qualified as executrix of his will. The evidence was that the testator of the defendant executrix had entered into a contract with her co-defendant for the construction of the stone work of its church, which contract, after obligating him to "make, erect, build and finish" such masonry under the directions of the superintending architect (and subject to changes made by him or the building committee), and to that end "to provide and deliver all and every kind of material, of good and sound quality and description, which may be necessary for the due, proper and complete execution of this contract;" also obligated the other party to pay, "in consideration of the erection of said masonry including the hammered rock and buttressed jambs, the cut stone, each to be delivered as aforesaid, the sum of $5,000." Said contract further authorized the church association to retain out of said amount enough to pay and satisfy the claims and demands of unpaid lienors. The church association further took a contractor's bond with security in the sum of $5,000 from said Straub, binding him to the due performance of his said contract, and idemnifying it against any loss or damage thereunder. Thereupon said Straub entered into the following contract with respondent:

"St. Louis, Mo.

"This agreement made and entered into this sixteenth day of September, A. D. 1890, by and between John Bambrick, party of the first part, of the city of St. Louis, Missouri, and Christ Straub, of Kirkwood, Missouri, party of the second part, witnesseth:

"Party of the first part hereby agrees and binds himself to deliver to party of the second part all stone he shall need in the construction of the Presbyterian

church now in course of erection at Webster Groves, Missouri.

"Party of the second part hereby agrees and binds himself to pay the party of the first part the following prices for stone used in the erection of said church building:

"Rock, $1.25 per perch measured in wall.

"Broken ashler, fifteen cents per square foot above price of building rock.

"Range work, twenty-five cents per square foot above price of building rock, provided said range work is not more* than ten inches thick; if more than ten inches and less than two feet, at the rate of fifty cents per square foot over price of rubble.

"Steps, twelve inches wide, fifty cents.

"Steps, eighteen inches wide, sixty cents per running foot.

"Caps, thirty cents per running foot over price of building stone.

"Sills, eight inches wide, thirty cents per running foot; nine to eighteen inches, at forty cents per running foot over price of building stone.

"Both parties hereby agree that, when the rock work of said church is finished, they will agree on a city engineer and have him measure and classify the rock work. After said engineer has classified said rock work, he shall give both parties a certificate certifying the amount of each class of stone work, and said second party hereby agrees and binds himself to pay the party of the first part according to said certificate and the prices heretofore mentioned.

"Both parties agree to pay the engineer share and share alike."

The respondent thereafter supplied the stone in suit, and delivered all of it except about seventy-five

perches before the death of Christ Straub, which happened on May 28, 1891.

John Dunhouser, the foreman of the men employed by Straub in carrying out his contract with the church association, received the stone delivered by the respondent under his contract with Straub, both before and after the death of the latter. The widow of said Straub carried out his contracts both with the church association and with respondent after his death. She qualified as his executrix shortly after his death. The last delivery of stone made by respondent was in June, 1891, and the church building was completed about the tenth or fourteenth of July, 1891.

There was no dispute as to the quantity of stone furnished by the respondent, nor do the appellants make any objection to the prices charged, except the item of charge for "ashler," the appellants insisting there was no "ashler or broken ashler" in the building, and the respondent affirming that the building contained five thousand two hundred and forty-seven and six-twelfths square feet hammer-dressed *ashler*. On this point the evidence was conflicting. The appellants' evidence tending to show that the proper method of making ashler was not employed; on the other hand the respondent's evidence tended to show that "broken ashler" was made and entered into the building, and that "ashler, broken ashler and hammer-dressed ashler, were practically the same and could be made in different ways; that after the stone delivered by the respondent had been turned into ashler, and other cut stone, there were left ninety-four loads of waste, which were hauled away.

After the completion of the building, the portions of the wall where respondent's stone had been placed was pointed out by Mr. Straub's foreman to two surveyors, Joyce and Johnson, acting for respondent and

defendant church association respectively. These surveyors measured these portions and their notes of measurement were the same. The computation of these figures by Mr. Joyce shows an itemization as to kind and quantity similar to that contained in the lien paper, to-wit:

St. Louis, Mo., June 17, 1891.

*Mr. Christ Straub, To John Bambrick,............... ...................Dr.*

To rock delivered to Presbyterian church, Webster Groves,

| | |
|---|---:|
| 494 12-22 perch rubble, at $1.25... ....... ............ ........ | $618.18 |
| 5247 6-12 sq. ft. ashler, at 15 cts. sq. ft... ............... ...... | 787.12 |
| 332 cu. ft. arch stone, at 30 cts. cu. ft.......... ............... | 99.60 |
| 106 lin. ft. caps, at 30 cts. cu; ft........................ ......... | 31.80 |
| 133 3-12 sq. ft. cut stone, at 15 cts. sq. ft..... ................. | 20.01 |
| 179 ft. base of range, 25 cts. lin. ft .... ...................... | 44.75 |
| 5 cu. ft. corner stone, at 30 cts. per cu. ft...................... | 1.50 |

$1,602.96

| | |
|---|---:|
| By cash......... ...................$125.00 | |
| By order... ... ................. 200.00 | |
| By balance of account.. ........... 217.23 | |

542.23

$1,060.73

In due time before filing the above lien paper the respondent, about August 14, 1891, gave notice to the church association as follows:

St. Louis, Mo., Aug. 14, 1891.

"*To Webster Groves Presbyterian Church Association (a corporation), Henry L. Wilson, President; L. J. Baker, Secretary.*

"Take notice that the undersigned, John Bambrick, of the city of St. Louis, Missouri, holds a claim against your rock church and rock chapel, situated (here follows description) for materials furnished on and to the same by him at the instance and request of, and under contract and agreement with Christ Straub, of Kirkwood, St. Louis county, Missouri, the contractor for making the improvements for you; that the balance of said claim amounts to $1,060.73, and that

the same is due to him from you, and accrued within four months prior to the giving of this notice."

There was evidence tending to show that the value of "ashler" was fifteen cents per square foot above its value as so much rubble, and that the amounts charged in the lien paper for the other items were reasonable.

The court, sitting as a jury, gave judgment in favor of the respondent for the amount sued for, and adjudged the same a lien upon the building and premises described in the petition, from which judgment the defendants have prosecuted this appeal. The appellants assign for error the ruling of the court in admitting in evidence the notice of the lien and the lien paper offered by respondent; also the ruling of the court in refusing three instructions requested by them. The appellants also insist that the finding of the court was excessive. The instructions proffered by the appellants were each based on the idea that the death of Christ Straub, pending the completion of his contract for the erection of the church building, operated as a cessation of such contract, and that his executrix could not under the facts in this case complete the contract after his death so as to thereby charge his estate. This proposition was also one ground of objection to the admission both of the notice of lien and the lien paper itself, and upon its correctness depends the propriety of the action of the trial court in refusing the said instructions and receiving the foregoing evidence.

The question as to the right of the executrix, both before and after qualification, to carry out the contracts of her testator can only be determined upon examination of the authorities as applied to the particular facts of the case.

At common law an executrix derived title from the will, and could do all the acts incident to the office, except sue, before taking out letters. Schouler on

Executors & Administrators, . sec. 194; 1 Woerner on Administration, sec. 172. An administrator, however, derived title from the appointment of the court, and could not dispose of the assets of the estate anterior to that time, except so far as his subsequent appointment would by a fiction relate back, and validate certain acts or alienations done in the interest of the estate and to prevent injustice and injury to it. The modern doctrine, however, is that a man's property at his death passes into the hands of the law for administration, whether he die testate or intestate, and that the title of his representative, whether named in the will or selected by a court of probate, is consummate only upon his subsequent qualification. The leading decision in this state on the rights of an executrix before qualification to dispose of assets is the opinion of Judge Bliss in *Stagg v. Green*, 47 Mo. 500. In that case it is said: "The fact that one is named in the will as executor does not, as at common law, make him executor in fact, but only gives him the legal right to become executor upon complying with the conditions required by law." It is then said that the statute, requiring executors to qualify by giving bond, is an implied prohibition from acting if he refuse to comply with the statute. With reference to the power of an executor to act in the interval prior to his qualification as such, the rule is also announced in the following terms: "I can have no doubt that under our laws the executor, by virtue of being so named, has no power to intermeddle with the estate except under pressing necessity, and only so far as is necessary, until letters have been obtained, although, if he shall so intermeddle and shall subsequently qualify, his letters will relate back and cover his former acts."

It is the clear doctrine of this case that an executrix, who subsequently qualifies, may charge the estate with acts done by her before qualification. 3 Redfield

on Wills, sec. 4, p. 22. .The question came before the supreme court again in *Wilson v. Wilson*, 54 Mo. 213. Judge Napton, in discussing the validity of a deed made by the executrix several years before the probate of the will, upheld the deed so made on the ground that it became effectual by subsequent probate of the will. He also draws the distinction between such acts prior to qualification, when performed by an executor or administrator, and shows that while the title of administrators relates back by a legal fiction, the title of executors, being derived from the will, vests in them from the moment of the testator's death. *Wilson v. Wilson*, 54 Mo. 215. In applying these principles to the case in hand, it was held that the power to make the deed in question was a right existing in the executrix before her qualification, subject to be defeated if she failed to qualify thereafter, and not otherwise.

As to acts after qualification. The general principle governing executors and administrators in dealings with estates in their hands after qualification is well stated by Judge WAGNER in *Merritt v. Merritt*, 62 Mo. 150, 157. In that case the administratrix carried on, without any order from the court, a hotel business for over a year after the death of her husband, and paid large sums of money under lease of the building to her husband. She was allowed credits against the estate for her payment under the lease, and also for her failure to collect a part of the purchase money for sale of furniture made by her, it appearing in proof that her acts and doings were in good faith, and for the benefit of the estate. In speaking of the statute (now Revised Statutes, 1889, section 100, which is as follows: " If any person die, leaving horses or other stock that require attention, crops ungathered, property so exposed as to be in danger of loss in value, or work in an unfinished state, so that the estate would suffer material

loss from the want of care and additional labor, the executor or administrator may, until the meeting of the court, procure such indispensible labor to be performed, on the most reasonable terms that he can."), the court said: "In all the instances enumerated in this section of the statute, the executor or administrator has full authority to act, and whatever he does is legalized. In other cases, if he proceeds without the direction or sanction of the court, he does so at his peril, and he will be held to a strict accountability." After reviewing the authorities as to the extent of liability on the part of executors and administrators acting without authority of court, in cases not provided for, it was said: "The prevailing rule now established in this court is, that executors and administrators stand in the position of trustees to those interested in the estates upon which they administer, and are liable only for want of due care and skill, and that the measure of care and skill required of them is that which prudent men exercise in the direction and management of their own affairs."

The limitations upon the power of executors and administrators created by the above quoted statute (Revised Statutes, 1889, sec. 100) was construed by the Kansas City Court of Appeals in *Powell v. Powell*, 23 Mo. App. 365. In that case the board bills due for men employed by an administrator to preserve property until the next meeting of court were held to be valid claims against the estate, and allowable in favor of the party presenting them. It is the plain effect of this decision that liabilities incurred in pursuance of the statute in question (Revised Statutes, 1889, sec. 100) exist in favor of *third parties* against the estate, and may be prosecuted in the names of such third parties, and that the interval of time, during which such liabilities may be created without an order of court, is

the vacation period between the term when the appointment was made, and the succeeding term.

The law is therefore: *First.* That an executrix, before taking out letters, may do all and any acts which the necessities of the trust estate and its preservation require, and that any liabilities so incurred by an executrix become, after her qualification as such, enforcible against the estate of the testator. *Second.* That, after taking out letters, an executrix may until the succeeding term of the probate court do any and all acts necessary to prevent material loss to the estate and to accomplish the objects pointed out in the statute, such as completing unfinished work, etc. The facts in this record do not show when the executrix received her letters testamentary; they only show that she had qualified when suit was begun on August 27, 1891. The statute, which we notice judicially (Revised Statutes, 1889, sec. 3401), provides for the holding of terms of the probate court in St. Louis county on the second Mondays in February, May, August and November. The testator died on May 28, 1891. The letters were granted either during the May term or the August term of said court, or in vacation between these two terms. In either event, her action in carrying out the contracts of her deceased husband, if these contracts did not cease at his death, was within the purview of her power and authority as executrix, and was a part of her duty to those interested in the trust estate in her hands for the following reasons: At the death of her husband his contract with the defendant church association had approached completion, and its fulfillment would entitle his estate to a large sum of money, or its nonfulfillment would involve his estate in heavy damages secured by contractor's bonds in a large sum and executed by him contemporaneously with the contract. In addition to this, her husband's estate was

liable under his agreement with respondent *(supra)* in a fixed sum for the price of stone agreed to be furnished thereunder. . In this state of things, there was but one course which could commend itself to a prudent and careful trustee, and that was to save the benefits of her husband's contracts, and avoid the losses incident to their abandonment. The defendant church association impliedly agreed to this by making no new contract, but accepting her performance of its contract with Straub. The respondent carried out his agreement as to furnishing stone to enable her to complete the erection of the building. The evidence tended to show that she did not complete these contracts by employing the same foreman and laborers whom her husband had employed before his death.

Under the authorities cited *supra* this action of the executrix, having been taken in good faith and to prevent injury to the estate, and having had the effect of increasing its assets, and being compelled by circumstances not admitting of delay, was clearly within the scope of her powers and duties as executrix named in the will, irrespective of her qualification at the time, and her acts and doings in this regard became chargeable against her as executrix upon her subsequent appointment as such. Assuming, therefore, that the executrix did not qualify until the August term, the conclusion cannot be avoided that her antecedent acts in finishing the work called for under her testator's contract, and procuring the material to that end, were fully validated by her subsequent qualification, and created a valid demand in favor of respondent for the materials so furnished. *Stagg v. Green, supra,* and *Wilson v. Wilson, supra.*

On the other hand, assuming that the executrix qualified at the May term, the result is that her subsequent acts in completing the unfinished work left under

her testator's contract, and purchasing material for that purpose, was but the doing on her part of a duty enjoined by the terms of the statute (Revised Statutes, 1889, sec. 100), and for the performance of which she had express statutory power until the next term of court. As that term did not convene until August, and as her fulfillment of her husband's contract was accomplished in June or July, it was plainly within the time allowed by statute for the doing of such work, and became therefore a charge upon the state. *Powell v. Powell, supra.*

The next question to be resolved is whether or not the contract of Christ Straub, deceased, with the church association and respondent ceased at his death. The general rule is that contracts of a personal nature resting on the personal skill, taste or science, of a party do not survive his death. But this rule does not embrace many cases of contracts for personal services, which might be rendered properly, or as well, by others than the party to the contract. In these cases, the contracts survive, and are enforceable for or against executors. This is illustrated by the rule stated in the text books as to the contracts of mechanics, to-wit: The representative of a mechanic may finish up the jobs on which he was engaged provided the incomplete work can be properly done by others and at a reasonable hope of profit to the estate, which might otherwise be liable in damages as for a breach of contract. Schouler on Executors, sec. 253; 2 Woerner on Administration, secs. 328, 329.

In an unreported case decided by this court (Reicke v. Saunders, 3 Mo. App. *566), it was directly adjudicated that a contract made by A to build the house of B does not cease by the death of B, but can be performed thereafter and become the basis of *one* lien

claim for materials furnished after the death of B as well as that furnished before, that such a contract is an entire undertaking, and is not defeated by the death of one of the parties, and that the lien account filed thereon is single and should date from the last item of the account. In the case of *Marshall v. Broadhurst*, 1 C. & J.* 403, the facts were that the defendant employed the testator to erect a building. Shortly after the order was given, and before it was begun, the testator died. The plaintiffs as his executors performed the work. It was held that the action was rightfully brought by the executors, and that their recovery would belong to the estate.

We conclude, therefore, that the contracts of Straub for the erection of the church building did not cease at his death, and that the steps taken by his executrix in completing them were valid in law, and, so far as respondent is concerned, created a charge in his favor against the estate, and that the trial court did not err in refusing defendants' instructions, since they were based on a contrary theory. Nor does the decision of Judge Thompson in *Gauss v. Haussman*, 22 Mo. App. 115, when restricted to the facts in judgment, contravene the views here expressed.

Appellants object to the lien paper, *first*, because, as they allege, it does not set forth a sufficient specification of dates; *second*, because, as they insist, it improperly blends in one account the items for stones furnished before the death of Straub with the items for stones furnished after his death. As to the first objection it is enough to say that the lien paper is identical with the one adjudged sufficient in *Hayden v. Wulfing*, 19 Mo. App. 355, and *Kearney v. Wurdeman*, 33 Mo. App. 456. As to the second objection, it may be well to note that the learned counsel for defendant

overlooks an important distinction in the rule as to blending accounts in one lien paper. The rule only forbids the intermingling of lienable and non-lienable items. *Lumber Co. v. Strimple,* 33 Mo. App. 154, 160. In the case at bar the contract of Straub did not cease at his death, and the material furnished thereafter was under the same contract as that supplied before. Both were lienable, and were properly stated in one account.

Appellants object to the notice served upon the defendant church association. There is no merit in this contention. Appellants do not show that the notice wants any of the statutory essentials prescribed in section 6723, Revised Statutes of 1889, but they criticise it only as containing a recital that the church association owed the debt for which the claim is made against the church property. Under the statute it was only necessary to recite in the notice that the lienor "holds a claim against such building or improvement, setting forth the amount and from whom the same is due." The legal effect of this notice, as appears by its terms, was to aver that both Christ Straub and the church association owed the debt therein claimed against the property. The joinder of the church association as one of the debtors was mere harmless surplusage in no wise detracting from its statutory essentials, nor depriving defendants of a knowledge of its purposes.

Appellants complain of the amount of the finding as to the item of "ashler" mentioned in the lien paper. The testimony of Murphy and others tended to show the reasonableness of the finding of the court as to this item. Besides the contract between Straub and respondent gave the value as adjudged. It has been expressly held by our supreme court that, in suits for

the enforcement of mechanics' liens, "the contract price is certainly *prima facie* evidence of the value of the work, and of the materials agreed, to be done and furnished." *Rude v. Mitchell*, 97 Mo. 365, 371.

The judgment in this case is affirmed. All concur.