[No. 8371. Department Two.  April 28, 1910.]

E. C. MACDONALD, *Trustee et al., Plaintiffs and Respondents*, v. EDWARD O'SHEA, *Administrator etc., Defendant*, THOMAS WALSH *et al., Defendants and Appellants.*[1]

CONTRACTS—SURVIVAL—PARTIES—PERSONAL REPRESENTATIVES. The obligations of a building contract which provides that it shall bind the parties, their heirs, and personal representatives, survives on the death of the contractor and binds his administrator.

INDEMNITY—DEATH OF PRINCIPAL—DEFAULTS OF PERSONAL REPRESENTATIVES. Where the obligations of a building contract survive, the surety on the contractor's indemnity bond is liable for defaults by the administrator after the contractor's death.

INDEMNITY — CLAIMS — EMPLOYMENT OF SUPERINTENDENT—EXECUTORS AND ADMINISTRATORS. Where the character and size of a building rendered the employment of a superintendent necessary after the contractor's death, his administrator may employ a superintendent whose claim would be a charge against the surety on the contractor's indemnity bond.

INDEMNITY—PAYMENT OF LIENABLE CLAIMS—REMEDIES OF INDEMNITOR. The surety on a contractor's indemnity bond, conditioned for the performance of the contract and to protect the property against liens, may, after default, pay lienable claims that were about to be filed, before the time for their filing has expired, and recover therefor on security given by the contractor.

EXECUTORS AND ADMINISTRATORS—CLAIMS—NECESSITY—MORTGAGES—FORECLOSURE—INDEMNITY. It is not a necessity for a surety on a contractor's indemnity bond to file a claim against the contractor's estate, where it merely seeks to foreclose a mortgage given by the contractor as security for the execution of the indemnity bond.

Appeal from a judgment of the superior court for Spokane county, Poindexter, J., entered March 20, 1909, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action to foreclose an indemnity mortgage. Affirmed.

*John M. Gleason* (*Joseph F. Morton*, of counsel), for appellants.

*E. C. Macdonald* and *Donald F. Kizer*, for respondents.

[1]Reported in 108 Pac. 436.

PARKER, J.—This is an action to foreclose an indemnity mortgage. A trial resulted in findings and judgment in favor of the plaintiffs, and certain of the defendants have appealed.

The material facts are, in substance, as follows: The National Surety Company is a corporation authorized to transact the business of surety in this state. On April 27, 1905, John J. Walsh executed and delivered to E. C. Macdonald, as trustee for the National Surety Company, a mortgage upon real property in Spokane, which mortgage by its terms was given to secure the sum of $3,500. This mortgage was intended to indemnify the surety company against any damage or loss which it might incur upon any bond thereafter executed by it at the request or for the benefit of John J. Walsh. On May 25, 1906, at the instance and request of John J. Walsh, the surety company executed and delivered its bond as surety in his behalf in favor of the Standard Furniture House, incorporated, in the sum of $7,500, whereby the surety company guaranteed that he would well and truly perform a certain building contract for the construction of a building, entered into on that day by him with the Standard Furniture House. By the terms of the building contract he was to furnish all material and labor for the erection and completion of the building, according to certain plans and specifications, at an agreed compensation of $15,050.75, and was to protect the property against all claims and liens occurring by reason of the construction of the building. It was provided in the contract that "The said parties for themselves, their heirs, successors, executors, administrators and assigns, do hereby agree to the full performance of the covenants herein contained."

On July 21, 1906, John J. Walsh died. At that time a comparatively small part of the contract had been performed. Soon thereafter Edward O'Shea was appointed and duly qualified as administrator of the estate of John J.

Walsh. The administrator, under the sanction of the court, proceeded with the construction of the building under the contract made by the deceased. Thereafter the administrator defaulted in the performance of the contract, in that he suffered and permitted liens to be filed against the property, and neglected to pay certain bills for material and labor used in its construction, amounting in the aggregate to $3,492.40. These claims were all lienable claims against the property, though not all of the claimants had actually filed liens. Thereupon the Standard Furniture House demanded that the surety company save it harmless from these claims. Thereupon the surety company, after investigating the claims and being satisfied of their validity, and that it was liable as surety upon the bond for their payment, complied with the demand of the Standard Furniture House and paid the claims on February 14, 1907. The appellants are heirs of John J. Walsh, and as such are interested in the mortgaged property. The court concluded that the claims paid by the surety company were valid claims against John J. Walsh and the surety company as surety, upon the contract and bond; and that the surety company, by virtue of its indemnity mortgage, was entitled to have the sums so paid by it declared a lien upon the property described in the mortgage, and to have the mortgage foreclosed.

Learned counsel for appellants contend that the contract for the construction of the building constituted such a personal relation between him and the Standard Furniture House that his obligation under the contract to construct the building did not survive but died with him, and that there was no obligation cast upon his personal representative, or his estate, requiring the completion of the building; and hence the surety company was under no obligation to pay lien claims, accruing after the death of Walsh, in the construction of the building. The general rule governing the survival of contractual obligations, as against the personal representative and the estates of deceased persons, is stated in 2 Parson's on Contracts (9th ed.), 685, as follows:

"It is a presumption of law that parties to a simple con-
tract intended to bind not only themselves, but their personal
representatives; and such parties may sue on a contract, al-
though not named therein. Hence, as we have seen, execu-
tors, though not named in a contract, are liable, so far as
they have assets, for the breach of a contract which was
broken in the lifetime of their testator. And if the contract
was not broken in his lifetime, they must not break it, but
will be held to its performance, unless this presumption is
overcome by the nature of the contract; as where the thing
to be done required the personal skill of the testator himself."
See, also, 18 Cyc. 239.

This rule is elementary. The difficulty in applying it
arises when the facts of the particular case are such as to
render it doubtful as to whether or not the thing to be done
requires the personal skill of the deceased himself. The su-
preme court of Pennsylvania in *Billings' Appeal*, 106 Pa.
St. 558, 560, said:

"Where a party agrees to do that which does not neces-
sarily require him to perform in person, that which he may,
by assignment of his contract or otherwise, employ others
to do, we may fairly infer, unless otherwise expressed, that
a mere personal relation was not contemplated. It is true,
also, perhaps, that a contract may involve matters of such
a nature as to render the performance of them so incom-
patible with the settlement of a decedent's estate, and so in-
consistent with the general duties of an administrator or
executor that, in the absence of any express provision to the
contrary, the parties may be presumed, as in the case of
*Dickinson v. Calahan's Administrator*, 7 Harris, 227, to
have intended its dissolution at death. The whole question,
in each case, is one for construction, and depends upon the
intention of the parties, that intention to be found under the
rules regulating the construction of contracts in general."

In the case before us there is no doubt of the intent of the
parties to make this building contract binding upon the ad-
ministrator of John J. Walsh as his personal representative
in the event of his death before the completion of the build-
ing, since the contract by its express terms so provides.

Therefore the administrator was bound to complete the performance of the contract in so far as the assets of the estate would permit, unless we can say that the building contract imposed upon John J. Walsh such a personal duty as to render it practically impossible of performance by any one but himself. An exhaustive note citing many authorities relating to this subject may be found in 21 L. R. A. (N. S.) 915 (*Mendenhall v. Davis*, 52 Wash. 169, 100 Pac. 336). See, also, note in 68 American Decisions, 760 (*Hawkins v. Ball's Adm'r*, 18 B. Monroe 816). It is clear that the obligation of deceased under this building contract was that of an independent contractor and was not a matter of rendering personal service. 16 Am. & Eng. Ency. Law (2d ed.), 187. There was nothing in the contractual relation existing between the deceased and the Standard Furniture House at all approaching the relation of master and servant; nor was it contemplated that the building, or any part thereof, when completed should be the product of his own personal labor or skill, either as laborer, mechanic or artist. He no doubt expected to perform his contract through the labor and skill of others to a very large extent, and he had the right to so perform the whole of his contract if he so desired. We have not had our attention called to any authorities holding that the obligation of an independent contractor under an agreement to build a building does not survive him, if the contract is not performed at the time of his death; while there is eminent authority to the contrary. Judge Woerner in his American Law of Administration (2d ed.), § 328, says:

"If one agrees to build a house before a given time, and dies before that time, his executors are bound to perform the contract; and the completion by an administrator of a decedent's contract to build a house attaches to his work all the liabilities of the original contract, so that a sub-contractor is entitled to his lien for materials furnished the intestate."

See, also, 3 Williams, Executors (7th Am. ed.), 224. Both

of these eminent text writers cite in support of their text, among other authorities, the early English case of *Quick v. Ludborrow*, reported in 3 Bulstrode's Reports, 30, in the year 1659, in which Coke, Chief Justice, said: "If a man be bound to build a house for another before such a time, and he which is bound dies before the time, his executors are bound to perform this." The following cases relating to building contracts support this view: *Kadish v. Lyon*, 229 Ill. 35, 82 N. E. 194; *Janin v. Browne*, 59 Cal. 37; *Riblet v. Wallis*, 1 Daly 360, 365; *Bambrick v. Webster Groves Presbyterian Church Ass'n*, 53 Mo. App. 225, 238; *Russell v. Buckhout*, 87 Hun 46, 34 N. Y. Supp. 271.

We are of the opinion that the obligations of John J. Walsh under this contract survived him and were binding upon his estate. It follows that the surety company was as much bound to the performance of this contract after the death of Walsh as it would have been had he lived to perform the contract in person.

One of the claims paid by the surety company was that of one Hutter, who was employed by the administrator to superintend the construction of the building. It is contended the administrator was not authorized to so employ Hutter, but it seems to us that the administrator was as much authorized to employ a superintendent as he was to employ mechanics and laborers. It is not seriously contended that a skilled superintendent was unnecessary. Indeed, the character and size of the building, as indicated by the record, would seem to render it plain that the employment of a skilled superintendent for its construction was reasonably necessary. We think that the surety company was as much bound to save the Standard Furniture House harmless from this claim as from the claims of other employees and materialmen, it being a lienable claim. 20 Am. & Eng. Ency. Law (2d ed.), 342.

We have noticed that liens were not actually filed by all the claimants, and it is argued that the surety company was not warranted in paying claimants who had not actually filed

liens. We think it is clear that all the claims paid by the
surety company were lienable claims, and it seems plain from
the evidence that, at the time of the payment of them by the
surety company, the time for filing such liens had not ex-
pired, and that they would have been filed had not the surety
company paid them. We think, under the circumstances, it
was the duty of the surety company to pay them without
waiting for them to be actually filed.

It is contended that the surety company ought not to be
allowed to maintain this action because he did not file any
claim against the estate with the administrator before com-
mencing the action. If the surety company was seeking to
charge the estate generally with its claim, there would be
merit in this contention, but since it is seeking only to en-
force its lien against the mortgaged property which was
expressly pledged to secure its claim, the failure on its part
to file a claim with the administrator does not affect its right
to foreclose the mortgage. *Scammon v. Ward*, 1 Wash. 179,
23 Pac. 439.

It is contended that the evidence does not support the
court's finding as to the amount and validity of the claims
paid by the surety company. In this connection some con-
tention is made against the good faith of the administrator,
and also against Hutter, the superintendent, it being claimed
that the building cost more than it would have cost by
proper management in its construction. We have carefully
read all of the evidence and conclude it was sufficient to
justify the court's findings in the particulars complained of;
nor do we find anything in the evidence which would warrant
the conclusion that the surety company was in any way re-
sponsible for any excessive cost of the building, necessitating
its payment of these claims.

We are of the opinion that the judgment should be af-
firmed, and it is so ordered.

RUDKIN, C. J., DUNBAR, MOUNT, and CROW, JJ., concur.