Argued January 6, decided January 13, 1914.

## IN RE STANDARD CAFETERIA CO.*

## O'CONNER v. STANDARD CAFETERIA CO.

(137 Pac. 774.)

**Assignments for Benefit of Creditors—Presentation of Claims—Time for Presentation.**

1. Under Section 7554, L. O. L., requiring an assignee for creditors to give notice by publication for at least six weeks and by mailing to each known creditor, requesting him to present his claim under oath within three months, though such a notice properly required claims to be presented within three months from its date in order to participate in the first distribution of proceeds, the claimant has at least three months from the first publication, unless the claimant has sooner received notice by mailing, within which to present his claim.

> [As to legal meaning of "require" in statute relating to notice to creditors of decedents, see note in Ann. Cas. 1912A, 1239.]

**Time—Presentation of Claims—"Month."**

2. Under Section 7544, L. O. L., requiring presentation of claims to an assignee for creditors within three months from notice, and Section 531, providing that the time within which an act is to be performed is computed by excluding the first day and including the last, unless the last is a nonjudicial day, in which case it is also

---

*As to the first and last days in computing time in matters of assignment for creditors, see note in 49 L. R. A. 240.        REPORTER.

excluded, where the first publication of the assignee's notice was on October 12, 1910, a claim presented on January 12, 1911, was in time; a "month" meaning a calendar month, unless a contrary intent is indicated.

**Appeal and Error—Reference—Review—Questions of Fact—Findings by Court.**

3.    Where the findings of a referee on a claim against an insolvent are properly set aside for error therein, and the testimony of the claimant tends to support the amended findings made thereupon by the court, such findings are conclusive on appeal.

[As to from what judgments or orders assignee for benefit of creditors may appeal, see note in Ann. Cas. 1914A, 1236.]

From Multnomah: WILLIAM N. GATENS, Judge.

This is a proceeding in the matter of the assignment of the Standard Cafeteria Company, by petition of H. M. O'Conner on claim against the insolvent debtor. The court below rendered judgment in favor of the petitioner, and the insolvent appeals.    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Sidney Teiser.*

For respondent there was a brief and an oral argument by *Mr. P. J. Bannon.*

Department 2.    MR. JUSTICE MOORE delivered the opinion of the court.

This is an appeal by an insolvent from a judgment establishing a claim against it.    The facts are that the Standard Cafeteria Company, a corporation doing business at Portland, Oregon, made an assignment October 7, 1910, for the benefit of all its creditors in proportion to the amount of their respective claims. Benjamin E. Hayman, who was selected as assignee, gave to such creditors notice of his appointment, requesting them to present to him their claims under oath within three months from the date thereof, to wit, October 19, 1910.    The first publication of the notice appeared in the "Morning Oregonian," a newspaper

of Multnomah County, in the issue of October 12, 1910. A writing was prepared and dated as follows:

"State of Oregon, County of Multnomah—ss.

"I, M. H. O'Conner, being first duly sworn depose and say that I am claimant of Portland, Oregon, and have personal knowledge concerning the said claims, which is for work and material (sheet-iron work) by myself and helpers to the Standard Cafeteria Co., a corporation, of the reasonable value and agreed price of $426.75; that no part of said amount has been paid, and that there are no offsets or counterclaims to same; that the annexed itemized bills and statements, showing items of said account are in every respect correct and accurate.

"x    M. H. O'Conner.

"Subscribed and sworn to before me this 12 day of January, 1911.

"Benjamin E. Hayman,
"[Notarial Seal]    Notary Public for Oregon."

Written exceptions to such demand were filed with the clerk of that county by M. C. Tebbetts, another claimant, on the ground that the sum so asserted to be due was excessive to the extent of about $300. Notice thereof having been given to O'Conner, he filed, in the Circuit Court for that county, a petition, in the nature of a complaint, setting forth a statement of his claim, and demanding judgment for the sum alleged to be due him. In order to ascertain such sum the cause was, by consent of the parties, referred to R. E. Hitch to take and report the testimony with his findings of fact and of law thereon. After the parties had submitted their evidence and rested, the referee, upon application of counsel for the insolvent, permitted an answer to be filed, denying most of the averments of the petition, and that O'Conner's claim had been filed within the time allowed. For a separate defense it was alleged that O'Conner had been paid

on account of his claim the sum of $338. The aver-
ments of new matter in the answer were treated as
denied. Upon this issue further testimony was taken,
and, based thereon, the referee made findings to the
effect that O'Conner's claim was not filed within the
time limited therefor, after the publication of the
notice of assignment; that between June 1, 1910, and
October 1st of that year he had sold and delivered to
the insolvent goods, wares and merchandise, and per-
formed for it work and labor of the value of $527.30,
and that he had received on account thereof $388, thus
leaving due $139.30. As conclusions of law the referee
further found that O'Conner was entitled to a judg-
ment against the Standard Cafeteria Company for the
sum of $139.30, to be paid after the claims presented
within three months from the date of the publication
of the notice of assignment had been discharged, and
that the assignee was entitled to a judgment against
O'Conner for the costs and disbursements of the pro-
ceedings. Exceptions to such findings having been
made by counsel for O'Conner, the court from the tes-
timony that had been so taken modified the referee's
findings of fact, and found that the claim had been
filed within the time required after the publication of
the notice to creditors. The referee's conclusions of
law were also modified so that the sum of $139.30
found to be due O'Conner should be paid in the same
proportion as those who had filed their claims within
the prescribed time, and that O'Conner was entitled
to recover his costs and disbursements. A judgment
having been rendered in accordance with the amended
findings, the corporation brings up for review the
determination thus reached.

1. A transcript of the entire testimony given before
the referee has been filed in this court; and, as the
cause was tried without the intervention of a jury,
the question to be considered is whether or not there

is any evidence supporting the findings of fact made by the trial court. A preliminary inquiry, however, is whether O'Conner's claim was presented to the assignee within the time prescribed by law. The person to whom a general assignment is made is required to give notice thereof, by publication in some newspaper of the county, for at least six weeks, and by mailing a notice to each known creditor of the insolvent estate, requesting him to present his claim under oath to such assignee within three months thereafter: Section 7544, L. O. L. It is the due publication in the specified newspaper of a notice to creditors of the insolvent that starts the running of the special statute of limitations against them. The notice is in the nature of process, and its publication in a newspaper is equivalent to a service thereof. Whether the period of time so limited by law for presenting claims begins to run from the first publication of the notice or the last, it is not important in the case at bar, for in any event the limitation could not, as we view the enactment, be put into operation except by at least one publication of the notice, or by the assignee's verified statement that notice by mail had been sent to O'Conner at his place of residence, giving the date of such mailing. No proof of the latter method of obtaining jurisdiction was offered in evidence. The date affixed to the notice as published properly called the attention of the creditors to the fact that, in order to participate in the first ratable distribution of the proceeds of the insolvent's property, their claims should be presented to the assignee within the time specified, which period antedated the expiration of the limitation prescribed by law. The date thus indicated in the notice is otherwise unimportant, for the statute of limitations did not begin, in any event, to run until October 12, 1910, the day of the first publication of the notice. From that day at least creditors

were allowed three months within which to present
their claims: Section 7544, L. O. L.

2. The word "month" is not defined by our statute,
and in such case the word is uniformly held to mean
a calendar month, unless a contrary intent is indicated:
5 Words & Phrases, 4574.

The time within which an act is to be performed is
computed by excluding the first day and including the
last, unless the last day is a nonjudicial day, in which
case it is also excluded: Section 531, L. O. L. The
first publication of the notice having been made Octo-
ber 12, 1910, and O'Conner's claim having been sworn
to before the assignee January 12, 1911, the affidavit
was made within the three months limited by the
statute: Section 7544, L. O. L. An examination of
the section thus referred to will show that a creditor
is under no legal obligation to see that his claim is
filed. His duty is fully discharged when he presents
to the assignee a claim under oath.

3. It is insisted, however, that such sworn written
declaration, a copy of which is hereinbefore set forth,
did not have annexed thereto "itemized bills and state-
ments showing items of said account," as expressed
therein, and, this being so, O'Conner's claim was not
presented at the time the affidvait was made. Refer-
ring to such writing voluntarily made under oath by
O'Conner, he testified as follows: "This is the claim
I presented to Mr. Hayman. I brought him a state-
ment of my account with the Standard Cafeteria and
Material Company, and he gave me a copy, and he
told me my claim was safe in his hands; this is a
copy of the claim."

Benjamin E. Hayman, the assignee, disputing such
sworn declarations, testified as follows: "On the 12th
day of January, 1911, Mr. O'Conner told me he had
a claim against the Standard Cafeteria Company
amounting to $426.75; that he didn't have a statement

of the account with him at the time, but he wanted to know what he should do in order to file a claim. I filled out this form [indicating the affidavit], a number of which I had in my desk to be filled out for claims against the Standard Cafeteria. He signed it, and I swore him on the 12th day of January, the day on which he appeared before me, attached my card to the place which is perforated by two holes, and told him to mail this proof of claim with his statement · of account; and the card was given him for the purpose of knowing where to mail it. I never received anything from him, either this proof of claim, or his · statement of account. He never filed anything with me; and my record filed in the Circuit Court on the 10th of January, 1911, shows his claim was not in this record as having been filed. The 10th of January, 1911, was the last day on which claims could be filed within the three-month period. This was sworn to two days subsequent, so he would not have come in with the first claimants anyway, but the fact is he never filed this claim, not any claim, with me, nor left any statement of account with me."

The affidavit produced by O'Conner and received in evidence has been included as an original exhibit in the case, and brought up with the transcript. Such sworn statement appears to have been subscribed by the claimant and by Hayman as notary public, whose seal is impressed in the paper on which the affidavit is set forth in typewriting. A mark "x," made with a pen, precedes O'Conner's name, thus seeming to indicate that the paper was to be sent out to claimants, whose signatures should appear on the line thus designated, and then to be returned to the assignee. The writing itself seems to bear intrinsic evidence that it was intended to be an original affidavit and not a copy, and for that reason to corroborate Hayman's testimony. But however this may be, as the referee

erred in his findings to the effect that the affidavit was not made within the time limited, the court properly set aside such conclusion of fact, and made its own findings; and, as O'Conner's testimony tended to support the amended findings, they are conclusive upon the question of fact involved, when it is remembered that the cause was ultimately tried without a jury.

It follows that the judgment should be affirmed; and it is so ordered.                              AFFIRMED.

MR. JUSTICE BEAN, MR. JUSTICE EAKIN and MR. JUSTICE McNARY concur.

MR. CHIEF JUSTICE McBRIDE not sitting.