No. 21,673.

*In re* THE ESTATE OF J. B. BETTS, deceased (THE EXCHANGE
NATIONAL BANK, *Appellant,* v. THE ESTATE OF J. B. BETTS,
deceased, LULU M. BETTS, as Executrix, etc., *Appellee.*)

SYLLABUS BY THE COURT.

1. BUILDING CONTRACT—*Made by Decedent—Authority of Executrix to
   Complete Contract.* The doctrine that the only effect of contracts
   made by an executor or administrator is to bind himself individually
   applies to a contract made by the personal representative in attempt-
   ing to carry on and complete a building contract entered into by the
   decedent in his lifetime.

2. SAME—*Estate Interested in Profits of Contract Only.* Notwithstand-
   ing the contract survives, the personal representative is not obliged to
   complete it; in case he does elect to carry on, he and those who deal
   with him are charged with knowledge of the law which declares that
   the estate is interested in the business only to the extent of the profits.

3. SAME—*Notes of Executrix Not a Valid Claim against Estate of De-
   cedent.* A decedent in his lifetime held a contract for the erection of
   a building, actual construction of which had been in progress about a
   month when he died. The widow, who was the executrix of the es-
   tate, executed notes to a bank signed by her as executrix, and applied
   the proceeds toward payment for labor and material which had been
   used in the construction of the building. She afterwards abandoned
   the enterprise, and the building was completed by the surety of the
   decedent. *Held,* that the notes were not a valid claim against the
   estate.

Appeal from Shawnee district court, division No. 1; ALSTON
W. DANA, judge. Opinion filed December 7, 1918. Affirmed.

*W. P. Waggener, J. M. Challis, G. L. De Lacy, Walter E.
Brown,* all of Atchison, and *W. A. S. Bird,* of Topeka, for the
appellant; *J. D. M. Hamilton,* of Topeka, of counsel.

*John L. Hunt,* of Topeka, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The sole question for determination is whether,
under the particular facts in this case, the estate of the dece-
dent is liable upon a contract made by his executrix.

J. B. Betts in his lifetime held a contract for the erection of
a building for the Y. M. C. A. at Atchison; actual construction

of the building had been in progress about a month at the time of his death. His widow was made executrix by his will, and some time after letters of administration issued from the probate court of Shawnee county she went to Atchison and arranged with the owner of the building to allow an estimate of the work already done; the estimate to be sent to the surety company (which had guaranteed the faithful performance of the contract), presumably, in order to obtain its approval of the payment of the amount allowed. Without waiting to hear from the surety company, the executrix arranged with the Exchange National Bank of Atchison to make her a loan of $980 on two promissory notes which she executed to the bank and signed "Lulu M. Betts Ex." The proceeds of these notes went in partial payment for labor and material used in the construction of the building. The surety company never approved the allowance of the estimate, and a week or ten days after the money was obtained from the bank, Mrs. Betts turned over the contract to the surety company, which completed the building with a loss under the original contract. The estate is insolvent; it is said the general creditors will receive from ten to fifteen cents on the dollar of their claims. The bank's claim for the amount due on the promissory notes was presented and filed against the estate. The probate court disallowed the claim. The district court held that the notes were not a valid claim against the estate, and rendered judgment against the bank, and from the judgment the bank appeals.

The plaintiff concedes the force of the general rule that the executor or administrator cannot bind the estate by a new contract, and that the only effect of contracts made by him is to bind himself individually. (*Shrigley v. Black*, 59 Kan. 487, 53 Pac. 477; *Campbell v. Faxon*, 73 Kan. 675, 85 Pac. 760; *Brown v. Quinton*, 80 Kan. 44, 102 Pac. 242; *Milbourne v. Kelley*, 93 Kan. 753, 759, 145 Pac. 816.)

The contention is, that an exception arises in cases of building contracts entered into by the decedent during his lifetime which remain uncompleted at the time of his death, and which the executor or administrator elects to complete.

The plaintiff contends that the rule upon which it relies has been the law since Chief Justice Coke, as early as 1685, in the case of *Quick v. Ludborrow*, 3 Bulst. 29, used this language—

Bank v. Betts' Estate.

"If a man be bound to build a house for another before such a time, and he which is bound dies before the time, his executors are bound to perform this." (p. 30.)

Plaintiff also quotes from 2 Woerner on the American Law of Administration (2d. ed.), as follows:

"Thus, if one agrees to build a house before a given time, and dies before that time, his executors are bound to perform the contract; and the completion by an administrator of a decedent's contract to build a house attaches to his work all the liabilities of the original contract, so that a sub-contractor is entitled to his lien for materials furnished the intestate." (§ 328.)

From 3 Williams on Executors (7th Am. ed. [1895]), the plaintiff quotes:

"It must be observed, that when the law speaks of executors not carrying on the business of their testator, it means that they are not to buy and sell. There are many cases when executors not only may, but are bound to continue the business to a certain extent. Thus, if a party contracts for himself and his executors to build a house, and dies, the executors must go on, *or they will be liable in damages for not completing the work.* So, if a party engages to build a house, and dies, after having procured all the necessary materials, it should seem that his executors ought to complete the work; . . . for otherwise those parts which he has purchased, upon the faith of the work being completed, are useless." (Italics ours.)    (p. 311 [*1689].)

These authorities do not go to the extent claimed by the plaintiff. All they decide is that building contracts are binding upon the heirs and executors of a decedent, and must be performed, or the estate "will be liable in damages for not completing the work." We fail to find any modern authority which upholds the contention that building contracts are in a class by themselves and bind the executor or administrator to carry them out regardless of consequences.

In *Lumber Co. v. Tomlinson,* 54 Kan. 770, 39 Pac. 694, an action was brought against the executor and heirs to foreclose a mechanic's lien for material and labor used in erecting a building. In that case two parties made a contract for the erection of a building; one of them died, and the other contractor abandoned the contract before the completion of the building. The executor of the deceased contractor, who was also one of the heirs, entered into a new contract with the plaintiff and completed the building. It was held that he was personally liable, but could not, as executor, without express authority in the

will, bind the estate by the new contract. The contention of the plaintiff in the present case, that building contracts stand in a class by themselves, was not considered.

In 40 L. R. A., n. s., 201, 236, there will be found an exhaustive note with numerous citations from the American courts on the question of the powers and liabilities of a personal representative, testamentary trustee, or guardian carrying on business. The author classifies the exceptions to the rule holding the personal representative alone liable, some of the exceptions being based upon statutory provisions, or the fact that the business has been carried on under the order of court, but no reference is made to any exception to the rule based upon building contracts. It is said in the note:

"The weight of authority is to the effect that the executor, even though he carries on a trade or business pursuant to testamentary authority, is individually liable to creditors for all debts contracted by him while so engaged; and that the creditors cannot proceed against the estate in order to satisfy their claims." (p. 203.)

In 11 R. C. L. the exhaustive article on executors and administrators, while enumerating some of the exceptions to the general rule, makes no mention, so far as we have been able to discover, of any exception based upon building contracts. It is said that—

"To authorize executors to carry on a trade with the property of a testator held by them, there ought to be the most distinct and positive authority and direction given by the will itself for that purpose." (p. 139.)

Again, it is said:

"Although where a business or trade is carried on under the provisions of a will by virtue of a statute permitting it, or by an order of a competent court, a personal representative will be relieved from individual liability to the estate for losses, he will continue to be bound personally for all debts incurred by him in reference to the business. *The courts take the position that he need not carry on the trade and incur this hazard, although authorized or directed to do so by the will;* but by engaging in the business he voluntarily assumes the responsibility of making its contracts his personal obligations." (Italics ours.) (11 R. C. L. p. 140.)

"So careful have the courts always been to guard against the perilous consequences resulting from embarking the assets of an estate in trade, that even when the will authorizes the executor to carry on the business of the decedent he cannot in so doing create liabilities against the general estate. Hence, such creditors have no claim on the general

assets, since to hold the general assets liable would be attended with great inconvenience and would prevent their distribution for a considerable period, or disturb a distribution already made." (11 R. C. L. p. 141.)

In *Campbell v. Faxon*, supra, which is not, however, directly in point, because the contract there was one which was dissolved by the death of the decedent, it was held that in the absence of a testamentary direction an administrator cannot carry on the business of a deceased person "and if he does so without authority, he will be individually bound for the contracts of the business." (syl. ¶ 2.) It was said in the opinion that one authorized by will "is not bound to incur the hazard, but if he does the contracts made will be his own, and he will be individually bound by them." (p. 679.)

In arguing for the necessity of an exception to the general rule, the plaintiff says in its brief that—

"To say in one breath that there are certain contracts which the representative must complete, and in the next that he will be held personally liable for his acts, would be to create a situation so unjust and repugnant to the present-day standards that it could not be tolerated."

But the representative is not bound to complete a building contract. There are doubtless situations where it would be the exercise of wise discretion on his part to elect to finish a building, but he is not obliged to do it; and in case he does elect to carry on, he and all those who deal with him are charged with knowledge of the law which declares that the estate is interested in the business only to the extent of the profits. Besides, no executor or administrator has general authority to borrow capital or funds with which to carry on or complete a contract made by the decedent. In any event, he would have authority to do no more than to employ capital or funds coming into his hands from the estate. He cannot bind the estate by executing notes for money borrowed by him, no matter whether the proceeds are used for the benefit of the estate or otherwise.

It is insisted that the original contract was not one which requird the personal skill of J. B. Betts. This may be conceded, and the reason why it is a contract which survives, is that because upon the death of J. B. Betts it would not have been difficult to find others equally capable of completing the building according to the plans and specifications. But this very test which demonstrates that the services of the contractor were

not personal and might have been performed by the successors of the promissor, or some other person employed by them, also demonstrates that the damages likely to be sustained by the owner of the building by the breach of the contract would probably not amount to much. In such a situation, an executor or administrator in determining whether to elect to carry out the contract might well consider the hazard of attempting to carry on, compared with the slight damages the owner of the building would be entitled to recover for the breach of the contract.

The judgment is affirmed.

MARSHALL, J., not sitting.