Argued February 3; modified February 28; rehearing denied
April 18, 1933

# SHEA *v.* GRAVES ET AL.

(19 P. (2d) 406)

*B. A. Kliks* and *Charles J. Taff,* both of McMinnville (C. W. Redding, of Portland, on the brief), for appellants.

*Arthur H. Lewis,* of Portland (Lewis, Lewis & Finnigan, of Portland, on the brief), for respondents.

BEAN, J. Charles A. Shea, administrator of the estate of J. F. Shea, deceased, was allowed a lien claim of $736 and $200 attorney's fees, plus other items, with interest. E. J. Struntz Planing Mill Company was allowed a lien claim of $167.49, with interest, and $75 attorney's fees. The allowance and foreclosure of these two lien claims is the basis of the appeal.

The property covered is lot 6, block 4, Miami Addition to the city of Portland, Multnomah county, Oregon. The liens were preferred and made prior to the mortgage of $3,500 of Louise B. Kliks and to the second mortgage of $4,500 of J. H. Wildman.

Defendant Graves owned lot 6, block 4, Miami, with other property, and after first mortgaging the property to one Seeberger, partially constructing a dwelling house thereon, mortgaged the same December 18, 1926, to Louise B. Kliks, which mortgage was recorded December 20, 1926. Defendant Wildman's mortgage covers lots 1 and 2, block 2; lot 2 and the south 50 feet of lots 4 and 5 and the north 58 feet of lot 6, block 4, Miami. The mortgage is dated January 14, 1927, and recorded the next day. There was a deed to defendant Crowe dated March 1 and recorded the next day. There were other third and fourth mortgagees and holders of judgments, but these parties made no appearance and their default was entered.

It is assigned as error, as to the Shea claim, that the summons was not issued or served within six months of the date of filing the same. No summons was issued by Shea. The appellants, however, appeared and contested the suit. It is claimed that the complaint was filed after the expiration of six months from the filing of the lien and is barred by the statute; that the Shea claim was not filed within sixty days after he ceased to labor on the building or the completion of the contract; that the Shea claim was paid; that neither the lien claimed nor the complaint alleged that the contract of either J. F. Shea or Charles A. Shea, as administrator, has been fully performed; that the administrator is not entitled to any lien; that the Shea lien claim is part of a claim for

labor and material furnished in the lifetime of J. F. Shea; that the alleged lien claim is not one within the statute for work, labor or material for J. F. Shea, nor for the administrator, nor anyone else, but apparently on behalf of an estate; that the lien claim was not founded on contract; that there can be no lien in behalf of an estate, because an estate is not a person and is not within the statute; that the claim of lien is made in behalf of the estate of J. F. Shea, deceased, but the proof shows that the work was done by the J. F. Shea Company.

The assignments of error as to E. J. Struntz Planing Mill Company are that the Struntz lien is paid, and that the claim of Struntz does not contain a true statement, after deducting all just credits, etc., and credit has not been given properly by Struntz.

It is shown in regard to the Struntz Planing Mill Company claim that the same is paid in full and the decree in favor of E. J. Struntz Planing Mill Company is reversed and the claim dismissed.

Section 51-101, Oregon Code 1930, provides:

"Every mechanic * * * contractor * * * and other persons performing labor upon or furnishing material * * * used in the construction * * * of any building * * * shall have a lien upon the same for the work or labor done * * * or material furnished * * *".

Section 51-105 provides:

"It shall be the duty of every original contractor, within sixty days after the completion of his contract * * * to file with the county clerk * * * a claim containing a true statement of his demand, * * * which claim shall be verified by the oath of himself or of some other person having knowledge of the facts".

Section 51-107 provides:

"No lien provided for in this act shall bind any building, structure, or other improvement for a longer period than six months after the same shall have been filed unless suit be brought in a proper court within that time to enforce the same; or if a credit be given, then six months after the expiration of such credit; but no lien shall be continued in force for a longer time than two years from the time the work is completed by any agreement to give credit".

■ The right to a lien is conferred by statute and the party claiming such lien must show a substantial compliance with the statute. *Boise-Payette L. Co. v. Dominican Sisters,* 102 Or. 314, 319 (202 P. 554); *Allen v. Rowe,* 19 Or. 188 (23 P. 901).

■ The lien of J. F. Shea, as administrator, was filed May 2, 1928, and the suit to foreclose the same was commenced November 2, 1928. The complaint was therefore filed within the six months. The word "month" as used in the statute means a calendar month.

In regard to the time of the commencement of the suit, counsel for defendants cite *Capital Lbr. Co. v. Ryan,* 34 Or. 73, 76 (54 P. 1093). In that case the lien claimant was not allowed for payments or material which were due more than six months prior to the commencement of the suit. It was stated: "In this case, more than that time had elapsed after the expiration of the credit for all installments falling due on or before the fourth day of February, 1894, and, as to them, the plaintiff lost its lien". The installments mentioned related to installments, as shown by the opinion and records of this court in the case, commencing on the 10th day of May, 1893, and monthly thereafter; therefore the installment due before February

4, 1894, was the installment due on January 10, 1894, much more than six months prior to the commencement of the suit. There was no question in regard to one day's time, as in the case at bar. While the language is "on or before" that date, it states that more than that time had elapsed, and the record shows that nearly a month more than six months had elapsed since the last installment became due prior to February 4, 1894.

In *O'Conner v. Standard Cafeteria Co.,* 68 Or. 550 (137 P. 774), under the statute requiring presentation of claims to an assignee for creditors within three months from notice and the statute providing that the time within which an act is to be performed is computed by excluding the first day and including the last, unless the last day is a nonjudicial day, when it is also excluded, where the first publication of the assignee's notice was on October 12, 1910, a claim presented on January 12, 1911, was held to be in time, "a month" when used without qualification, meaning a calendar month unless a contrary intent is shown. See Cyc. 312; *In re Gregg,* 213 Pa. 260 (62 Atl. 856).

■ The plaintiff was allowed six months only and not six months and a day, in which to commence suit to foreclose his lien after the lien was filed. The suit was commenced within six months of the date upon which the lien notice was filed. May 2 would not be computed within the six months as the law knows no fraction of a day. The six months from May 2 would not expire until the end of November 2. Therefore, the complaint was filed within the time provided by the statute. The filing of a complaint or answer in a suit to foreclose a mechanic's lien, although without the service of summons, saves the lien from the bar of the statute of limitations. Section 51-107, Oregon

Code 1930; *O'Conner v. Standard Cafeteria Co.*, supra; *Title Guarantee Co. v. Wrenn*, 35 Or. 62 (56 P. 271, 76 Am. St. Rep. 454); *Burns v. White Swan Mining Co.*, 35 Or. 305 (57 P. 637); 40 C. J. 392; 38 Cyc. 313.

■ The summons serves the purpose of bringing the defendants into court and where they appear in a suit, it is immaterial whether summons was served in a suit of this kind or not. It is plainly written on the record that the complaint was filed and suit commenced with the intention of diligently prosecuting the same, and it was prosecuted with diligence. Appellant cites section 51-118. This law was passed in 1891 and has to do with the foreclosure of liens for clearing, ditching, digging or improving land and does not change or amend section 51-107. This point urged by appellant is not well taken.

■ As to the second objection, an original contractor within the meaning of the mechanic's lien law is one who furnishes labor or material and labor on a contract direct with the owner. It is shown by the record that Charles A. Shea, as administrator of the estate of J. F. Shea, deceased, furnished labor and material on a contract direct with the owners, Ernest L. Graves and wife, and was an original contractor. *Shea v. Peters*, 126 Or. 76 (268 P. 989); *Bernard v. Hassan*, 60 Or. 62 (118 P. 201).

■ Under section 51-105, Charles A. Shea, administrator, had sixty days from the completion of his contract to file a lien. It was the plan of Ernest L. Graves, who was constructing several houses and for whom Shea did the plumbing, to commence the construction of a dwelling house and when it was partially completed, like the one in question, it was allowed to remain uncompleted until he had an opportunity to sell the same

and then he would proceed with its completion. The building in question was commenced more than a year before it was finished and the "roughing in" of the plumbing was done in January, 1927, and then it was allowed to remain until about January, 1928, when at the request of the owner the lien claimant proceeded to complete the plumbing and did work thereon amounting to about $200. This work, it is shown quite plainly from the record, was finished on the 5th and 6th days of March, 1928. This is shown by the testimony of the plumbers who did the work, refreshing their memories from their time cards, and also by the testimony of the superintendent of the work. It was all a part of the last job of the work which was done in January and February. The last work on the 5th and 6th of March consisted of finishing the shower bath, putting in the shower curtains and finishing the toilet, making permanent connection with the water, and testing the fixtures after the water was turned on.

The work was demanded by the terms of the original contract and final completion would date from the time this was supplied. It was done at the request of the owner. It appears that Thomas A. Crowe and wife, who purchased the property, moved into the dwelling about February 27, 1928, before the plumbing was completed and there is some testimony by Mrs. Crowe that she did not see much of this work done. The bathroom, where the last work was done upon the shower, was on the second floor and the testimony of the plumbers and the superintendent who took the last material out to the dwelling on March 5, 1928, convinces us that the plumbing was not finished until that time. *Stark-Davis Co. v. Wilson,* 119 Or. 308 (248 P. 1095); *Eastern & Western Lbr. Co. v. Williams,* 129 Or. 1 (276 P. 257).

■ Charles A. Shea, administrator, the original contractor, could not file the lien until the contract was completed. *Block v. Love*, 136 Or. 685 (1 P. (2d) 588). Shea was the original contractor and was required to file his lien within sixty days of the completion of his contract.

■ When work is done at the owner's request under a claim that it is required by the contract, the owner is estopped to assert that the contract has been already completed. *McIntyre v. Trautner*, 63 Cal. 429. From that case we quote as follows: "Defendant cannot be heard to say that the additional work, done at his request to complete the contract, was not a continuation of the previous work, and done under the same contract".

As to the contention in regard to the payment of the Shea claim, that Shea accepted a deed to certain property as payment, it is shown that while a deed was made to Shea, as there were judgments and many other liens thereon, the deed was not accepted by Shea and payment was not made in this manner.

■ The objection is made that the complaint does not allege that the contract has been fully performed. It is shown in the notice of the lien attached to and made a part of the complaint that Shea, the claimant, performed labor and furnished material used in the construction of the building by virtue of a contract and that the work had been performed. In the absence of an attack by demurrer or motion, the complaint to foreclose this mechanic's lien, though not particularly alleging the contract was completed, is sufficient. Testimony was introduced without objection as to the completion of the plumbing work. The main office of a complaint is to inform the defendant what is claimed,

and, upon issue being joined, to direct the proof. The defendants were not prejudiced in this respect. *Heacock v. Loder,* 106 Or. 323 (211 P. 950) ; *Barr v. World Keepfresh Co.,* 77 Or. 95 (150 P. 747).

The present case differs from *Lorenz v. Gray,* 136 Or. 605 (298 P. 222, 300 P. 949), as in that case, which was the foreclosure of a mechanic's lien, it was held they must allege the contract was completed within sixty days or state facts excusing completion. In that case the complaint was attacked by demurrer. In the present case the allegations of the complaint are to the effect that the claimant, at the instance and request of defendant, Ernest L. Graves, between the first day of January, 1927, and the 15th day of March, 1928, performed labor and furnished material used in the construction of the building, and plaintiff performed his last labor and furnished his last material on March 12, 1928, and on May 2, 1928, within sixty days from the completion of his contract, he filed his claim of lien. The complaint indicates the contract was completed and we think these allegations, in the absence of a demurrer, are sufficient.

■ The sixth objection is that the Shea lien claim is part of the claim for labor and material furnished in the lifetime of J. F. Shea and also for a part of the labor and material furnished after the death of J. F. Shea, and that the two cannot be combined and made into one lien claim. As we read the testimony it supports the allegations of the complaint that the labor and material were furnished by Charles A. Shea, as administrator, after the death of J. F. Shea. Shea's evidence is to the effect that the work started January 11, 1927. J. F. Shea died December 18, 1926.

It is claimed by defendants that there can be no lien in behalf of Charles A. Shea, as administrator of the estate of J. F. Shea, deceased. It is determined by *Phillips v. Graves,* 139 Or. 336 (9 P. (2d) 490), that there can be no lien filed by an administrator for labor performed or material furnished by administrator's decedent during his lifetime. In the present case the claim is made by the administrator for labor performed and material furnished by the administrator, Charles A. Shea, himself, after the death of J. F. Shea, pursuant to the authorization of the probate court. Charles A. Shea, as administrator of the estate of J. F. Shea, pursuant to his contract with Graves and on account of his having furnished material for and performed labor in the construction of the building, was entitled to file a lien therefor and foreclose the same. *Telfer v. Kiersted,* 9 Abbott's Pr. Rep. (N. Y.) 418; *Williams v. Webb,* 2 Disn. (Ohio) 430; 1 C. J. 207, § 401; Phillips on Mechanic's Liens (3d Ed.) 686, § 393.

■ A building contract made by decedent in his life-time may be completed by his personal representative. *Janin v. Browne,* 59 Cal. 37; *Bank v. Betts' Estate,* 103 Kan. 807 (176 P. 660, 3 A. L. R. 1604); *Bambrick v. Webster Groves Presb. Church Assoc.,* 53 Mo. App. 225; *Russell v. Buckhout,* 87 Hun. 46 (34 N. Y. S. 271); *Riblet v. Wallis,* 1 Daly (N. Y.) 360; *In re Allam's Estate,* 199 Pa. 573 (49 Atl. 252); *Quick v. Ludborrow,* 3 Bulstr. 29 (81 English Reprint 25); *Reicke v. Saunders,* 3 Mo. App. 566. In *Macdonald v. O'Shea,* 58 Wash. 169, 173 (108 P. 436, Ann. Cas. 1912A, 417), the court quoted from Chief Justice Coke: "If a man be bound to build a house for another before such a time, and he which is bound dies before the time, his executors are bound to

perform this''. The following case supports a lien filed by a receiver: *Fenton v. Fenton,* 90 Conn. 7 (96 Atl. 145).

The administrator conducted this business of the estate for approximately fifteen months. This estate has no creditors and the beneficiaries appear to have been willing that the administrator conduct the plumbing shop business for the purpose of liquidation. Otherwise, the administrator would have been compelled to sell, or, as stated, to "junk" a large stock of plumbing material at great loss to the estate.

 As a general rule an execuor or administrator is not justified in placing the assets of the estate in trade, and the law charges him with all losses thereby incurred without allowing him to receive the benefits of any profits which he may make. The persons beneficially interested in the estate may either take all the net profits made or hold the representative liable for the amount of funds used, with interest. 24 C. J. 55, § 474. This rule has its limitations. Good discretion may require some latitude in closing out decedent's business, and this a probate court will duly consider. An executor or administrator may be justified in continuing the business so far as is necessary for the purpose of winding up the same and converting the assets into money or carrying out existing contracts of decedent under a proper order of the probate court. 24 C. J. 57, § 475; *Shafford v. Reed,* 119 Or. 90 (247 P. 324); *Re Estates of Bethel,* 111 Or. 178 (209 P. 311, 226 P. 427); *In re Ennis' Estate,* 96 Wash. 352 (165 P. 119); 24 C. J. 58, § 476; 11 R. C. L. 135, § 142.

 We believe that the matter of conducting the business of J. F. Shea's estate, pursuant to the order of the probate court, was a matter for the consideration

of that court in passing upon the final account of the administrator. The only persons interested in the same are the beneficiaries of the estate, since there were no creditors of the estate, and the debtors who bought goods and obtained the benefit of the materials and labor in the construction of a dwelling and third outside parties are not in a position to question the proceedings of the estate in the probate court or the validity of the administrator's contracts to furnish the plumbing materials and labor. The administrator is personally liable to creditors for all debts contracted. *The Multorpor Co. v. Reed,* 122 Or. 605 (260 P. 203, 55 A. L. R. 504). The reason for the rule holding personal representatives responsible for loss sustained or shrinkage is for the protection of the beneficiaries and creditors of the estate, not for the protection of the estate debtors or outside parties. The beneficiaries of the Shea estate are of age and sui juris and were satisfied with the method pursued by the administrator, who was their brother, in handling the affairs of the estate.

In *Stewart v. Richey,* 17 N. J. Law 164, 165, we find the following language:

"* * * where the action accrues to the executor or administrator upon a contract made by or with him, as such, since the death of the testator or intestate; or for an injury done to, or a conversion of the property of the testator or intestate, in the hands or possession of the executor or administrator, after the death of the testator or intestate, there the action may and ought to be brought in the proper name of the executor or administrator, describing himself to be such; * * *"

See *Sears v. Daly,* 43 Or. 346 (73 P. 5); *Leavitt v. Scholes Co.,* 210 N. Y. 107 (103 N. E. 965). In 24 C. J. 732, § 1808, we find the following: "the overwhelming weight of authority supports the view that if the fruits of the

recovery will be assets the representative may declare in either his representative or his individual capacity, * * *".

A contract, to be a contract, must be binding upon both parties. There must be mutuality. This is an axiom of law. In the case in hand we have a party in existence who made the contract with the defendant Graves, a contract which this court says is, if the administrator has gone beyond his authority, enforceable against the administrator personally. It is not a nullity for the reason that there were parties capable to contract. The weight of authority which is sanctioned by this court is to the effect that such a contract as the one under consideration, if unauthorized, is not a nullity or absolutely void but the legal result is that the contract becomes the personal obligation of the administrator if the creditors and beneficiaries see fit to so elect. *Shafford v. Reed,* supra. The latter case sustains the general rule that under certain circumstances the administrator may operate the decedent's business, and the costs thereof are chargeable against the estate. *In re Estates of Bethel,* supra, a dairy farm was operated by the administrator for 10 years. The administrator completed an unfinished barn, bought a Ford truck, cleared and seeded land, employed help, maintained the household, and in addition to all of this the court allowed the administrator wages for his work. But, where the continuance of the business is unauthorized, all debts contracted are the debts of the administrator and he cannot be reimbursed by the estate. 24 C. J. 61, § 480. Apparently, from a consideration of the cases, the court's concern is for the creditors and beneficiaries of the estate and the courts have therefore hedged the administrator with restrictions.

In the case of *In re Ennis' Estate,* supra, the administratrix obtained an order to conduct the business of the decedent for the purpose of liquidation and incurred certain debts or trade obligations for new goods purchased. The administratrix rejected the claims of these creditors filed against the estate on the ground that she had no authority to carry on decedent's business. The statute of Washington does not authorize the carrying on of decedent's business, but is similar to ours allowing an administrator to sell the personal property. The Supreme Court of Washington said:

"In resisting the claims of appellants, counsel for the administratrix maintains that she had no authority to carry on the mercantile business even under the order of the court, inasmuch as no statute confers that power on the court. There are two lines of decision in this country upon that question; one upholding the jurisdiction of probate and chancery courts to authorize a personal representative or trustee to continue a decedent's business, the other denying such power. The general rule, under which a personal representative is denied the power of continuing a decedent's business, has some limitations, which are stated in 18 Cyc. 242, as follows: * * *"

See also *Gordon v. Loomer,* 50 Colo. 409 (115 P. 717); *Fleming v. Kelly,* 18 Colo. Supp. 23 (69 P. 272).

In conducting the administration of the estate Charles A. Shea did not attempt to make any contracts in the name of J. F. Shea or in the name of the estate of J. F. Shea, but as Charles A. Shea, as administrator of the estate of J. F. Shea.

It is contended by plaintiff that if the contract in question was that of Charles A. Shea, then the. lien notice that such labor and material were sold to Graves by Charles A. Shea, "as administrator of the estate of J. F. Shea, deceased, and for and on behalf of said

estate", under the authorities, would be merely descriptive of the transaction and where they are in excess of the requirements of section 51-105 would be mere surplusage. Citing 24 C. J. 64. And if the lien notice states more than the statute requires, this does not render it void, as unnecessary recitals may be treated as surplusage. Citing 40 C. J. 207; *Chamberlain v. Hibbard*, 26 Or. 428 (38 P. 437); *Warrenton L. Co. v. Smith*, 117 Or. 530 (245 P. 313). It is not deemed necessary to decide this phase of the case.

The defendant J. H. Wildman seeks to foreclose a second mortgage executed on January 14 and recorded January 15, 1927, by Ernest L. Graves and Irene Graves, his wife, for the sum of $4,500, with interest from date until paid, at the rate of 8 per cent per annum, to secure the payment of a note for the said amount, which second mortgage was upon

"Lots One (1) and Two (2) in Block Two (2); Lot Two (2) and the South Fifty (50) feet of Lots Four (4) and Five (5), and the North Fifty-eight (58) feet of Lot Six (6) in Block Four (4), Miami, lying and being within the corporate limits of the City of Portland, County of Multnomah and State of Oregon".

A decree was rendered foreclosing said mortgage subject to a mortgage of $3,500 and interest thereon on each of the individual pieces of property described and subject to bonded city assessments and allowing defendant Wildman attorney's fees in the sum of $450 and costs and disbursements. The decree of the lower court provides as follows:

"That the mortgage lien of the defendant J. H. Wildman in the sums decreed and found to be due said Wildman is hereby declared to be a lien against said Lot Six (6) Block Four (4), Miami, and the building and land prior and superior to all other claims of lien ex-

cept the mechanic's liens and the mortgage lien of the defendant Louise B. Kliks herein foreclosed to which the same is subordinate and inferior, and the said mortgage of said J. H. Wildman is hereby declared to be a lien against said Lots One (1) and Two (2), in Block Two (2); Lot Two (2) and the South 50 feet of Lots Four (4) and Five (5), Miami, in the corporate limits of the City of Portland, County of Multnomah, Oregon, and prior in right to the claims of all parties whomsoever save and except only the said mortgage claims of $3,500 each herein referred to, but the Court finding that Lot Two (2), Block Two (2) has already passed to a decree and has been passed on by the Supreme Court, therefore, the mortgage so far as Lot Two (2), Block Two (2), Miami, is concerned is hereby declared of no effect and declared as of no further lien upon Lot Two (2), Block Two (2), Miami''.

The circuit court found that the construction of the building in question was begun about August 26, 1926. Wildman's mortgage having been executed on January 14 and recorded on January 15, 1927, was subsequent to the time of the commencement of the construction of the building. Section 51-103 provides that:

''A lien created by this act upon any parcel of land shall be preferred to any lien, mortgage, or other incumbrance which may have attached to said land subsequent to the time when the building or other improvement was commenced, or the materials were commenced to be furnished and placed upon or adjacent to the land; also to any lien, mortgage, or other incumbrance which was unrecorded at the time when said building, structure, or other improvement was commenced, or other materials for the same were commenced to be furnished and placed upon or adjacent to the land; and all liens created by this act upon any building or other improvement shall be preferred to all prior liens, mortgages, or other incumbrances upon

the land upon which said building or other improvement shall have been constructed or situated when altered or repaired; * * *''

The respondents appeal from that part of the decree entered whereby it was adjudicated that the mortgage lien of defendant J. H. Wildman was prior and superior to the mechanic's liens of plaintiff and the defendant E. J. Struntz Planing Mill Company upon and against lots 1 and 2, block 2, and the south fifty feet of lots 4 and 5 and lot 2 in block 4, all in Miami, subject to mortgages of $3,500 each in favor of Louise B. Kliks on the ground that there is a total failure of proof to sustain such decree. J. H. Wildman also appeals from the decree foreclosing his mortgage.

As to the mechanic's liens of E. J. Struntz Planing Mill Company, that has already been disposed of and its cross-complaint dismissed.

As to the appeal of plaintiff Shea, it is shown above that the mechanic's lien of plaintiff is superior to the J. H. Wildman mortgage as applied to lot 6, block 4, Miami. Defendant Wildman introduced the original note and mortgage, the correctness of the amount due, the existence and recording of which are admitted. It does not appear from the pleadings that respondents have any claim to or lien upon the other lots covered in the Wildman mortgage. Therefore, we fail to see how plaintiff has any reason to complain of the decree foreclosing Wildman's mortgage. If plaintiff had any interest in the lots other than said lot 6, it was incumbent upon him to set forth the same in answer or reply to J. H. Wildman's answer and cross-complaint. The J. H. Wildman appeal, with the exception that the Wildman mortgage embraces other lots than said lot 6, raises the same questions and

is submitted in the same briefs as the appeal of the other defendants. Therefore, the decree of the lower court as it applies to the J. H. Wildman mortgage is affirmed. No costs should be awarded in favor of or against J. H. Wildman.

The case of *Jack Wempe v. Ernest L. Graves et al.,* was dismissed as to plaintiff Jack Wempe by the order of the lower court on September 26, 1928, and that case, No. M-6812, was on January 5, 1929, by order of the circuit court, consolidated with the case of *Charles A. Shea, Administrator, v. Ernest L. Graves et al.,* and the case proceeded under a new title. The consolidated cases were tried by the circuit court as one suit and one decree was entered.

With the exception of the decree as to the lien of E. J. Struntz Planing Mill Company, as above provided, the decree of the lower court is affirmed.

RAND, C. J., concurs.

CAMPBELL and BAILEY, JJ., concur in the result.